## THE KATE BUTTERONI.

### NORTON et al. v. DONALDSON et al.

(Circuit Court of Appeals, Second Circuit. January 12, 1894.)

No. 52.

COLLISION—FOG—INATTENTION TO SIGNALS—EXCESSIVE SPEED.

A vessel which hears a fog signal at three miles distance with such distinctness as to enable her to correctly locate an approaching vessel as being about a point on her starboard hand is chargeable with notice of subsequent signals which indicate a change of course so as to cross her bows; and if, through inattention, she fails to hear them, but continues at full speed, until a near signal indicates a situation so critical that it is too late to reverse with safety, she is chargeable with fault contributing to the collision.

Appeal from the District Court of the United States for the Northern District of New York.

In Admiralty. Libel by John Donaldson and others against the steamer Kate Butteroni, Charles E. Norton and others, claimants, for collision. There was a decree below for divided damages. Claimants appeal. Affirmed.

Harvey D. Goulder, for appellants.

Clinton, Clark & Ingram, (George Clinton, of counsel,) for appellees.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. This is an appeal by the owners of the steamer Kate Butteroni from a decree of the district court for the northern district of New York, dividing the damages ($13,736.80) resulting from a collision between that vessel and the steam propeller Cuba, and adjudging both vessels in fault. In deciding the cause the district judge did not render any opinion. The owners of the Cuba have not appealed.

The collision took place on Lake Huron, June 16, 1890, about 10:30 A. M., in a fog, which had set in about an hour and a half before. The Butteroni was proceeding down the lake, with two sailing vessels in tow on a hawser, one behind the other. She was on a course S. E. by S. ½ S., and was going at a speed of about five miles an hour, which was her full speed, incumbered as she was. The Cuba was proceeding up the lake on a course N. by W. half W., without cargo, and going at a speed of eleven miles an hour. Although the fog was so thick that vessels could not discover one another within a distance of three or four hundred feet, the collision was wholly inexcusable. There was no wind, there was ample sea room; each vessel, when she discovered the other to be approaching, was on the regular course, substantially, of vessels navigating that part of the lake; each was properly manned and equipped; and each, while she was approaching the other, was properly sounding fog signals, in accordance with the regulation which requires such signals to be sounded at intervals of not more

than one minute. When the vessels were three miles apart each heard the fog signals of the other, and heard them so distinctly that those on board each vessel assumed to be able to locate their bearing accurately; and from this time until the collision took place each should have heard the fog signals of the other at the regular intervals, and any other signals which either might choose to give. Under such circumstances, if they had been proceeding at moderate speed, and been vigilant in observing signals, there should have been no difficulty on the part of either in locating the bearings of the other as they drew near together, and taking proper measures to avoid collision.

The facts of the collision, other than those which have been mentioned, are involved in the conflict of testimony usual in this class of cases, and we shall content ourselves with stating our conclusions in respect to them without attempting to detail or analyze the evidence.

When the vessels first heard one another's fog signals each had the other a very little—probably less than a point—on the starboard bow. The Butteroni correctly located the bearing of the Cuba by the latter's fog signals, but the Cuba located the bearing of the Butteroni as right ahead, or between that and half a point on her port bow. The vessels maintained their previous courses for a time, and then the Cuba altered her course half a point to starboard, and gave the Butteroni a signal indicating her intention to pass the latter port to port. Not getting any response from the Butteroni to this signal, the Cuba, after hearing the fog signals of the Butteroni two or three times, and judging from them that the vessels were on converging courses, gave the Butteroni another signal to pass port to port, and altered her course one point further to starboard, and slackened her speed. Getting no response to this signal, and discovering from subsequent fog signals of the Butteroni that the vessels were still drawing across each other's bows, the Cuba gave the Butteroni another signal to pass port to port. This last signal was immediately answered by a like signal from the Butteroni, which indicated that the vessels were in a situation where risk of collision was imminent, and thereupon the Cuba immediately reversed her engines and hard-ported her helm. Her headway had not been stopped when the vessels came together. After the Butteroni first heard the Cuba's fog signals, she proceeded without change of course or speed until the last passing signal of the Cuba was given and answered. At that time the vessels were not more than a quarter of a mile apart. Immediately upon answering the Cuba's signal, the Butteroni hard-ported her helm, but she kept on at full speed until the vessels struck. The port bow of the Butteroni struck the bluff of the port bow of the Cuba.

No appeal having been taken by the owners of the Cuba from the decree adjudging her guilty of fault, the only question we have to decide is whether the Butteroni was also guilty of contributory fault. It is doubtless true that during the earlier period of the approach

of the two vessels the signals from the Cuba indicated to the Butteroni that the Cuba was apparently taking a course by which she would pass safely on the Butteroni's starboard hand. But the subsequent signals from the Cuba—both fog signals and signals for passing port to port—should have admonished the Butteroni that the Cuba had changed her course, and was drawing across the course of the Butteroni. If the Butteroni did not hear those signals, especially the signals for passing, it must have been owing to the want of vigilant attention on the part of those in charge of her navigation. They had heard the earlier ones distinctly, and had located their bearing with accuracy. During the interval between the first and second passing signals, as well as between the second and third, the Cuba repeated her fog signals regularly. The prolonged blasts of the passing signals ought to have been heard even though, when they were being sounded, the Butteroni was sounding her fog signals. We are constrained to believe that after the Butteroni found that the bearing of the fog signals of the Cuba had steadily broadened on her starboard bow, those in charge of her navigation assumed that the Cuba would pass well on the Butteroni's starboard hand, and relaxed their observation of the Cuba. It is possible she mistook the fog signals of the Alcona, a steam vessel approaching her on a parallel course, but well to the starboard, for those of the Cuba. If, owing to inattention, the Butteroni omitted to hear the signals of the Cuba, she cannot escape responsibility for the consequences; she is responsible to the same extent as though she had heard them. Chargeable with notice that the Cuba was drawing across her bows, it was certainly her duty to slacken speed as soon as risk of collision was involved, if it was not her duty to stop and back. She did not do so, but kept on at full speed until the near signal of the Cuba indicated the situation to be so critical that it was too late for her to reverse with safety. It is impossible to find upon the facts of the case that this fault did not contribute to the collision. As this fault was a violation of one of the statutory rules intended to prevent collision, it is presumed that it did contribute to the collision; and the burden rests upon the Butteroni of showing not merely that her fault might not have been one of the causes, or that it probably was not, but that it could not have been. The Pennsylvania, 19 Wall. 125. As we are clearly of the opinion that the Butteroni was in fault for the reasons already given, we deem it unnecessary to consider whether she committed any other faults which contributed to the collision.

The decree of the district court is affirmed, with the costs to the appellees of this appeal, and the cause remitted to the district court to decree accordingly.